**Kenneth Roy BUTTS, Petitioner–Appellant,**

**v.**

**Judith Sharon BUTTS, Respondent–Respondent.**

No. 19563.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 3, 1995.

Motion for Rehearing or Transfer
Denied Aug. 23, 1995.

Application to Transfer Denied
Oct. 24, 1995.

---

Roger W. Owensby, Republic, for appellant.

Daniel W. Imhof, Springfield, for respondent.

GARRISON, Presiding Judge.

This is an appeal by Kenneth Butts (Appellant) from the denial of his motion to modify an award of periodic maintenance. Respondent was awarded $700 per month when their twenty-year marriage was dissolved on February 27, 1990. Appellant filed the instant motion to modify on April 19, 1993 seeking to terminate or decrease that award. The trial court heard the motion on April 5, 1994 and denied it at the close of Appellant's evidence.

On this appeal, Appellant contends that the trial court erred in not decreasing or terminating the maintenance award because (1) Appellant subsequently remarried and had a child; (2) Respondent is cohabiting with another man in a relationship which is permanent and a substitute for marriage; and (3) Appellant's earning capacity has decreased because of back injuries which limit the type of work he can perform. We affirm.

Appellate review of a ruling on a motion to modify is pursuant to Rule 73.01(c) and is limited to a determination of whether it is supported by substantial evidence, whether it is against the weight of the evidence, or whether it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Vance v. Vance,* 852 S.W.2d 191, 192 (Mo.App.S.D. 1993). Due regard is given to the trial court's determination of the credibility of witnesses. *Id.* "The trial judge is in a better position than this court to determine the credibility of the parties and witnesses, their sincerity, character and other trial intangibles which may not be shown by the record." *Id.* at 192–193. Also, the trial court may believe or disbelieve all, part, or none of the testimony of any witness. *Willard v. Doyle,* 612 S.W.2d 884, 888 (Mo.App.S.D.1981). We accept, therefore, as true the evidence and inferences therefrom that are favorable to the trial court's judgment and disregard all contrary evidence. *Stein v. Stein,* 789 S.W.2d 87, 92 (Mo.App.E.D.1990). An appellate court will defer to the trial court even if the evidence could support a different conclusion. *Bradley v. Bradley,* 880 S.W.2d 376, 379 (Mo.App.W.D.1994).

Under § 452.370.1, RSMo1994, a modification of maintenance requires a show-

ing of changed circumstances so substantial and continuing as to make the terms of the dissolution decree concerning maintenance unreasonable. *Fulp v. Fulp*, 808 S.W.2d 421, 423 (Mo.App.W.D.1991). The statutory standard for modification is designed to be strict so as to discourage recurrent and insubstantial motions for modification. *Id.* The burden of proving substantial and continuing change rests with the moving party. *Id.*

In his first point, Appellant contends that the trial court's judgment is against the weight of the evidence because several factors, including Appellant's subsequent remarriage and birth of a child, justify a decrease or termination of the maintenance award.

In the instant case there was evidence that Appellant remarried on August 26, 1992, and a child was born to him and his new wife on June 8, 1993. Remarriage alone is not a sufficient ground for decreasing maintenance, but it may be considered as a factor if children are born of that marriage. *Farnsworth v. Farnsworth*, 553 S.W.2d 485, 486 (Mo.App.E.D.1977); *Markham v. Markham*, 506 S.W.2d 84, 86 (Mo.App.E.D.1974); *Clisham v. Clisham*, 485 S.W.2d 660, 665 (Mo.App.E.D.1972). The legitimate expenses incurred by the divorced husband by reason of the birth of a child in his subsequent marriage may be considered on the issue of a change of circumstances. *Jourdan v. Jourdan*, 251 S.W.2d 380, 383 (Mo.App.E.D.1952).

In addition to his remarriage and the birth of his child, Appellant and his current wife testified about considerable financial problems and poor living conditions. They had purchased a home under a contract for deed but were unable to continue making the payments and were evicted. At the time of the hearing, they were living in a motel because, according to their testimony, they did not have sufficient funds to pay the first and last months' rent and a utility deposit required to rent an apartment.

Appellant had also filed bankruptcy, but was denied discharge of some of the debts which he was ordered to pay in the dissolu-tion decree. His wages are subject to a garnishment for those debts. There was also a wage assignment for the maintenance payments to Respondent. At the time of the hearing, Appellant was earning $13.43 per hour in his work as a truck driver and he admitted that there had been some years since the dissolution in which he had made in the "middle $40's." Appellant testified that after the garnishment and wage assignments, his take home income was "around $250 to $300" per week. His present wife, however, described their net income per week as "anywhere from $300 to $350."

Changed circumstances sufficient to support modification of a maintenance award must be proven by detailed evidence and must also show that the prior decree is unreasonable. *Bradley v. Bradley*, 880 S.W.2d at 379; *Vance v. Vance*, 852 S.W.2d at 193; *Magaletta v. Magaletta*, 691 S.W.2d 457, 458 (Mo.App.E.D.1985). The concept of a change of circumstances "necessarily entails a departure from a known prior state or condition." *Fulp v. Fulp*, 808 S.W.2d at 423.

In the instant case, the evidence presented by Appellant concerning his present financial condition was of a general nature and did not reveal what additional expenses were attributable to the birth of his child. Additionally, there was no evidence which would have permitted the trial court to compare Appellant's financial condition at the time of the hearing to that which existed at the time of the dissolution. Finally, no evidence was presented to the trial court about Respondent's financial condition or needs either at the time of the dissolution or at the time of the hearing.

In the absence of evidence of a substantial and continuing change of circumstances, a prior maintenance award should not be modified. *Fulp v. Fulp*, 808 S.W.2d at 423. Additionally, an appellate court should exercise the power to set aside a decree or judgment on the ground that it is "against the weight of the evidence" with caution and with a firm belief that the decree

or judgment is wrong. *Murphy v. Carron*, 536 S.W.2d at 32. We are unable to find that the trial court erred, under the applicable standard of review, and therefore deny Appellant's first point.

In his second point, Appellant contends that the trial court erred in not terminating or decreasing the maintenance award because of Respondent's cohabitation with William Wesley Glenn. He relies primarily on *Herzog v. Herzog*, 761 S.W.2d 267 (Mo.App. E.D.1988), and argues that the relationship between Respondent and Mr. Glenn is permanent in nature and has become a substitute for marriage justifying a decrease or termination of the maintenance.

 In *Herzog*, the court considered whether post-dissolution cohabitation by the spouse receiving maintenance would authorize the modification or termination of that award. It recognized a basic unfairness in requiring a former spouse to continue to support a spouse who has since entered into a "long term or permanent relationship." *Id.* at 268. The court acknowledged that equity principles could apply in determining the effect of such a relationship on the continuing duty of support, but recognized the difficulty in formulating "a set of rules which would fairly address the many variations of non-marital relationships as they exist today." *Id.* Although the court affirmed the trial court's denial of the former husband's motion to modify, it said:

> Where the relationship has achieved a permanence sufficient for the trial court to conclude that it has become a substitute for marriage, equitable principles warrant a conclusion that the spouse has abandoned his or her rights to support from the prior marriage and is looking to the new relationship in that regard. Permanence may be found from either the time involved or the intentions of the persons involved. Of course, substantial continuing support from a third party with or without a permanent relationship may justify a modification as a changed condition. Where a permanent relationship exists,

however, the level of support obtained therefrom is, as with remarriage, irrelevant.

*Id.* at 268–269.

Appellant argues that, in the instant case, the evidence indicated there was a permanent relationship between Respondent and Mr. Glenn which is the equivalent of a substitute for marriage. He points to the testimony of Mr. Glenn that he and Respondent had lived in the same house for two to three years and share the rent and living expenses; that he previously told Appellant that "he had the Respondent now and she was his"; and that they had been sexually intimate. He also argues that Mr. Glenn testified that "he had made a permanent commitment to be with the Respondent for the rest of his life."

 Our review of the record in this case indicates that the evidence was less than conclusive concerning this point. Mr. Glenn did testify that he and Respondent share equally the rent ($485 per month), phone and utility expenses; that they had sexual relations approximately five times since 1990; and that it was his intention for them to live together for the rest of their lives. He also testified, however, that they have never helped each other financially except to share the rent and utilities; they do not give gifts to each other; they live together "like a brother and sister"; they have always had separate bedrooms and they have not had sexual relations for a long time; they do not have a romantic relationship; and he has not prepared a will or any other form of estate planning. Although he testified that Respondent was his girlfriend, he admitted that this was just his thought and they had not really discussed it. While admitting that he told Appellant that he shouldn't expect to get Respondent back because she was his, Mr. Glenn testified that this did not indicate a commitment between them.

We also note that there was no evidence that Respondent and Mr. Glenn have commingled any of their funds or that they have

made any provisions for each other in the event of death. In addition, we note that Respondent did not testify and there was no direct evidence about her intentions concerning the relationship. Under these circumstances, we cannot conclude, even under the reasoning of *Herzog,* that there was evidence that the relationship has achieved such a permanence as to be a substitute for marriage, thereby requiring a termination of the maintenance award.

The court in *Herzog* also recognized that cohabitation, even if not of a permanent nature, may justify modification of maintenance where the ex-spouse receives "substantial continuing support" from the cohabitant. *Id.* at 269. This is consistent with the approach of certain courts described with approval in *Brown v. Brown,* 673 S.W.2d 113, 115 (Mo.App.W.D.1984). That approach directs the attention of the court "to the *satisfaction* of the *need* and not the right to maintenance," and recognizes the reality that the receiving spouse "has no legal claim" to the support of the cohabitant. *Id.* at 115–116.

In *Weston v. Weston,* 882 S.W.2d 337 (Mo.App.S.D.1994), this court followed that approach and affirmed the trial court's order decreasing maintenance based on a change of circumstances in the financial needs of the receiving ex-spouse, including the effects of the financial contributions made by the cohabitant. In the instant case, however, as indicated in our discussion of the first point, there was no evidence presented to the trial court concerning the financial condition or needs of Respondent or how they compared to that which existed at the time of the dissolution. Likewise, there was no evidence of the impact that Mr. Glenn's sharing of expenses had on Respondent's financial needs. There was, therefore, no evidence which would have required a finding by the trial court that any contribution by Mr. Glenn toward Respondent's living expenses constituted such a substantial and continuing change of circumstances as to require a modification of the maintenance award. Appellant's second point is, therefore, denied.

In his final point, Appellant contends that he suffered back injuries and the "injuries limit the type of work he is able to perform causing a decrease in his earning capacity, and when considered with other factors, justifies a decrease or termination of maintenance." Appellant had been employed as a truck driver at Associated Wholesale Grocers, Inc. in Springfield for thirteen years and two months at the time of the hearing. There was evidence that Appellant suffered a back injury after the dissolution when he was unloading a truck, and that he had back surgery for a herniated disk. There was also evidence that Appellant suffered a separate back injury thereafter. Appellant testified that he "can't stand the pressure of pushing groceries off anymore" and cannot "throw up the catch up on top of the pallets." For those reasons he testified that he cannot make deliveries which require those activities and therefore has experienced a decrease in income. The only evidence in support of that contention, however, was Appellant's testimony that his income has "*probably* dropped $400 to $500 a month." Not only was this testimony of a general nature, as opposed to being detailed or specific, but the trial court was also not required to believe it. Additionally, a decrease in Appellant's income alone does not require a reduction in maintenance. *Bradley v. Bradley,* 880 S.W.2d at 379; *Moseley v. Moseley,* 744 S.W.2d 874, 877 (Mo.App.S.D.1988).

Based on the record, the trial court did not err in failing to find that Appellant's back injuries required a modification of the maintenance award. Appellant's third point is without merit.

Judgment affirmed.

CROW, J., concurs.

PARRISH, J., dissents and files dissenting opinion.

PARRISH, Judge, dissenting.

I respectfully dissent. I would reverse the order denying appellant's motion to modify the original maintenance award. I would do so based on appellant's Point II.

As suggested in *Herzog v. Herzog,* 761 S.W.2d 267, 268 (Mo.App.1988), "[T]here is a

basic unfairness in requiring a prior spouse to continue support of a spouse who has entered into a long term or permanent relationship having some of the benefits of marriage but few of the detriments." I believe the trial court, under the facts in this case, erred in failing to grant relief.

Respondent has lived with William Wesley Glenn for two to three years (compared to "approximately a year" in *Herzog* ). They have cohabited. He contributes to rental costs.

Appellant, on the other hand, has the obligation of supporting a child born of his current marriage. He has sustained significant financial reverses since the dissolution of his marriage with respondent. His lifestyle is anything but lavish. Why should he be required to contribute to respondent's ongoing association with Mr. Glenn?

In my opinion the result in this case encourages what was described in *Herzog* as "[t]he current social trend of non-marital cohabitation." *Id.* I do not believe that result is consistent with the public policy of this state.